UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD JONATHAN CARNEY,

                              Plaintiff,          Civil Action No. 25-cv-2525-LAK

                -against-

LARA ST. JOHN,

                        Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

THE LAW OFFICES OF BRIAN K. BERNSTEIN, P.C.
Brian K. Bernstein, Esq.
*Attorneys for Defendant*
2050 Center Avenue, Suite 435
Fort Lee, New Jersey 07024
brianbernstein@bkbesq.com
201-461-3800

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTS ...................................................................................................................................... 5

    A. Parties .......................................................................................................................... 5

    B. The January 29th Commentary .................................................................................. 6

    C. The St. John Letter to the BSO. ................................................................................. 6

ARGUMENT ............................................................................................................................ 8

    1.  Statement of Fact ...................................................................................................... 10

    The St. John Letter to the BSO is Privileged ................................................................ 11

    The Court Must Decide if Words are Susceptible to the meaning Ascribed to
    them by Plaintiff. ........................................................................................................... 15

    The Letter and Posts are Privileged as Fair Report of Official Proceedings ................ 16

    The Complaint Fails to Plead Facts to Support an Allegation of Actual Malice ........... 17

    Legal Fees ..................................................................................................................... 20

I.   DEFENDANT SHOULD BE AWARDED REASONABLE FEES ................................... 21

    A. New York Civil Rights Law §70-a Applies to This Action ........................................ 21

    B. This Is an Action Involving Public Petition and Participation ................................... 23

    C. Plaintiff Commenced This Suit Without Substantial Basis ....................................... 24

II.  DEFENDANT'S REQUESTED FEES ARE REASONABLE .................................................. 24

CONCLUSION ........................................................................................................................ 25

## TABLE OF AUTHORITIES

Cases

*Adelson v. Harris,* 774 F.3d 803, 809 (2d Cir. 2014) ....................................................22

*Adelson v. Harris,* 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013),
    *aff'd,* 876 F.3d 413 (2d Cir. 2017).......................................................................9

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany,*
    493 F.3d 110, 111-12, 117- 18 (2d Cir. 2007) ...............................................25

*Aristocrat Plastic Surgery P.C. v. Silva,* 206 A.D.3d 26, 29 (1st Dep't 2022) .................24

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting, Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 570 (2007))...............................................................................8

*Bingham v. Gaynor,* 203 N.Y. 27, 31 (1911) ....................................................................7

*Biro III,* 807 F.3d at 546 (alteration in original) (*quoting, Twombly,* 550 U.S. at 556) ....................19

*Biro v. Condé Nast,* 963 F. Supp. 2d 255, 265, 265 (S.D.N.Y. 2013) (Biro II),
    *aff'd,* 3d 541(2d Cir. 2015) (Biro III) ..............................................................9

*Bobulinski v. Tarlov,* 2024 WL 4893277 ........................................................................22

*Bobulinski v. Tarlov,* 758 F. Supp. 166, *21-24 (S.D.N.Y. 2024)....................................19

*Bobulinski v. Tarlov,* 758 F. Supp. 3d 166, *36 (S.D.N.Y. 2024)....................................22

*Bobulinski,* 2024 WL 4893277, at *13 ............................................................................24

*Bobulinski,* 758 F. Supp. at *18.....................................................................................19

*Bobulinski,* 758 F. Supp. at *8.......................................................................................19

*Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n.30 (1984)..................19

*Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 176 (2d Cir. 2000)............................9, 10

*Celle,* 209 F.3d at 177 (alteration in original) (quoting *Aronson v. Wiersma,*
    65 N.Y.2d 592, 593 (1985)) ..........................................................................15

*Chambers v. Time Warner,* 282 F.3d 147, 152-53 (2d Cir. 2002) ...................................9

*Delgado* at *11 ...............................................................................................................10

*Delgado v. Sonnen,* 2025 U.S. Dist. LEXIS 62612 *12; 2025 WL 1042343
    (S.D.N.Y. Feb. 18, 2025) ..............................................................................10

ii

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ..............................................10

*Earth Flag Ltd. v. Alamo Flag Co*, 154 F. Supp. 2d 663, 669 (S.D.N.Y. 2001) ................................25

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) ..............................................................................21

*Flamm v. Am. Ass'n. of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000)
    (citing, *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995) ...............................................................10

*Friedman v. Bloomberg L.P.*, 884 F.3d 83,  93 (2d Cir. 2917)
    (quoting, *Becher v. Troy Publ'g Co.*, 183 A.D.2d 230, 233 (3d Dep't 1992)) .......................17

*Gertz v. Robert Welsh, Inc.*, 418 U.S. 323 (1974) ...............................................................................17

*Glob. Network Commc'ns., Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ............4

*Hanna v. Plumer*, 380 U.S. 460, 465 (1965) .........................................................................................21

*Harrell v. Van der Plas*, 2009 WL 3756327, at* I (S.D.N.Y. Nov. 9, 2009) (Lynch, J.)
    (citation omitted) ..............................................................................................................................25

*Isaly v. Garde*, 83 Misc. 3d 379, 389 (Sup. Ct. N.Y. Cty. 2024) ...................................................22

*James v. Gannett Co.*, 40 N.Y.2d 415, 419 (1976) ...........................................................................15

*James v. Gannett Co., Inc.*, 40 N.Y. 2d 415, 422 (1976) ...................................................................18

*Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 169-70 (S.D.N.Y. 2021)
    (quoting, *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)) ............................9

*La Liberte v. Reid*, 966 F.3d 79, 86 N.3 (2d Cir. 2020) ...........................................................18, 22

*Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997) (internal citations omitted) ........................16

*Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992) ...............................................................................7

*Liberman v. Gelstein*, 80 N.Y.2d 429, 438 (1992), citing *Garrison v. Louisiana*,
    379 U.S. 64, 76 (1964) .....................................................................................................................15

*Liberman*, 80 N.Y. 2d at 350 ...............................................................................................................15

*Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ........................................................11

*McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020) ........................19

*New York Times v. Sullivan*, 376 U.S. 254 [1964] ....................................................................14, 15

*Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 25 (S.D.N.Y. 2020) ......................................9. 18, 23

*Prince v. Intercept,* 634 F. Supp. 3d 114, 138 n.26 (S.D.N.Y. 2022)................................................22

*Rapaport v. Barstool Sports, Inc.* at *11, *aff'd.* No. 22-2080-CV, 2024 U.S. App.
     LEXIS, 556, 2024 WL 88636 (2d Cir. Jan 9, 2024)..................................................................11

*Rapaport v. Barstool Sports, Inc.*, No. 22-2080-CV, 2024 U.S. App.
     LEXIS, 556, 2024 WL 88636, at *2 (2d Cir. Jan. 9, 2024) .......................................................10

*Rapaport*, 2021 U.S. Dist. LEXIS 59797, 2021 WL 1178240, at *12 ..........................................11

*Rapaport*, 2021 U.S. Dist. LEXIS 59797, 2021 WL 1178240, at *14
     (citing *Eros Int, PLC*, 191 A.D.3d 465, 140 N.Y.S.3d 518 (1st Dep't 2021) ...........................14

*Reid v. McKelvey*, No. 22-cv-10708 (JGLC) (OTW), 2024 U.S. Dist.
     LEXIS 176975, 2024 WL 4345585, at *2 at S.D.N.Y. (Sept. 30, 2024)
     (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))................................................................9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 398 (2010) .............21

*Shuman v.  N.Y. Mag.*, 2021 WL 3161629, at *2 (N.Y. Sup. Ct. June 15, 2021),
     *aff'd*, 211 A.D. 3d 558, (1st Dep't 2022) ..............................................................................18

*Shuman v. N.Y. Mag.,* 2021 WL 3161629, at *2 (Sup. Ct. N.Y. Cty. June 15, 2021),
     *aff'd*, 211 A.D.3d 558 (1st Dep't 2022). ...............................................................................23

*St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)........................................................................15

*Sweigert v. Goodman*, No. 18-cv-08653, 2021 WL 1578097, at *1
     (S.D.N.Y. Apr. 22 2021) ...................................................................................................18, 23

*Sweigert v. Goodman,* No. 18-cv-08653, 2021 WL 1578097, at *2
     (S.D.N.Y. Apr., 22, 2021)......................................................................................................22

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017)............16

*We the Patriots, USA, Inc. v. Hochul*, 17 F.4th 266, fn. 3 (2d Cir. 2021).......................................4

**Statutes**

N.Y. Civ. Right Law §74 (McKinney 2023)............................................................... 1, 16

N.Y. Civ. Rights Law §70-a .................................................................................20, 21, 24

N.Y. Civil Rights Law §70-a(l) ..............................................................................*passim*

Strategic Lawsuit Against Public Participation ........................................................*passim*

Defendant Lara St. John ("St. John" or "Defendant") hereby submits this memorandum of law in support of her motion pursuant to Fed. R. Civ. P. 12(b)(6) and Civil Rights Law §74 for an Order dismissing Plaintiff Edward Jonathan Carney's ("Carney" or "Plaintiff") Complaint[1] with prejudice and for counsel fees pursuant to N.Y. Civil Rights Law §70-a(l).

## PRELIMINARY STATEMENT

This defamation lawsuit arises out of a letter sent by St. John to Mark C. Hanson, the President and CEO of the Boston Symphony Orchestra ("BSO") regarding Carney, a public figure, a compromised investigation by the BSO into allegations involving Carney, reports about Carney's conduct and the announcement by Carney and the BSO that Carney would be retiring with honors as Concertmaster of the BSO at the end of the 2026-2027 season and would thereafter be named the BSO's first Concertmaster Laureate in its history.

St. John, a world-renowned concert violinist sent a letter (the "Letter") to the BSO expressing her profound disappointment in the decision to grant Carney such accolade given the multiple reports of his egregious behavior. St. John's Letter refers to the reports, public and private, regarding Plaintiff's conduct and requested that the BSO initiate a new investigation into Carney's behavior, to be conducted by an impartial expert and to make the results of that investigation public and to dismiss Carney for cause. The Letter specifically refers to Katherine Needleman, ("Needleman") a friend of St. John, who is a principal oboist of the BSO. Needleman filed a harassment complaint against the BSO with the EEOC and Maryland Committee on Human Rights ("HRC") accusing Carney of harassment and retaliation. Needleman filed her complaints alleging that Concertmaster Carney propositioned her for sex in 2005, and that ever since she rejected him, he has engaged in a

---

[1] A copy of the Complaint is annexed to the Affirmation of Brian K. Bernstein, Esq. ("Bernstein Aff."), as Exhibit "A").

deliberately offensive pattern of behavior, including daily hostility, efforts to undermine her work and subjecting her to physical intimidation and threats.

St. John's statements refer to the many reports of harassment made against Carney, including Needleman's claims and public filings and St. John expressed her opposition to the BSO bestowing honors upon Carney and urged an investigation by an independent expert. Plaintiff, in an effort to chill, if not, completely silence St. John's criticism, filed this SLAPP suit against her. In this action, Plaintiff relies on the Letter, St. John's Facebook post and nothing more. Egregiously, however, a review of the Complaint reveals, especially ¶18 thereof, that Plaintiff intentionally removed words set forth in the Letter to alter the context and statements in an effort to create a defamation claim.

Plaintiff commenced this action by the filing of a Complaint on March 27, 2025, alleging a single cause of action for defamation against St. John. A copy of the Complaint is annexed to the Bernstein Aff., as Exhibit "A". Specifically, Plaintiff alleges that on January 29, 2025, "St. John published a <u>commentary</u> on her Facebook page" (Complaint at ¶12) (emphasis added), which Plaintiff alleges may be accessed by thousands of people. Plaintiff alleges, and claims to be aggrieved by, the January 29th commentary, in which St. John stated,

> "It is appalling to me that this Carney concert master is now allowed to retire with heaps of laurels, while a lot of women have been harassed and abused by this guy. It is well known that he asked many women in the orchestra for sex." (Complaint at ¶13)

The January 29, 2025 commentary by St. John was exactly that, her commentary about a public figure on a matter of public interest. St. John's commentary constitutes her opinion and is not actionable.

The Complaint further alleges that on or about February 19, 2025, St. John published a copy of a letter she had sent to Mark Hanson, President and CEO of the Baltimore Symphony Orchestra,

complaining that Plaintiff was being permitted to retire from the BSO with the title Concertmaster Laureate. A copy of the letter, which was attached to the Complaint is attached to the Bernstein Aff. as Exhibit "B".

The second statement about which Plaintiff complains is similarly deficient, both legally and factually, to constitute a defamatory statement of fact. St. John's makes reference that "it has been reported" that Plaintiff "solicited" numerous women in the orchestra for sex is not a defamatory statement of fact regarding his conduct.

The third statement, that Plaintiff made the working life of an oboist Needleman, who "rejected Plaintiff's advances 20 years ago and that he has made her working life unnecessarily difficult since that time" is not defamatory. Moreover, Needleman has made such statement in her public charges filed with the HRC and EEOC.

Plaintiff's allegation that Carney made Needleman's working life at the BSO unnecessarily difficult "because she refused his request for sex," is not the statement set forth in that Letter. Plaintiff elected, for litigation purposes, to remove significant portions from the Letter to create a false impression. The Letter states, in relevant part,

> "It has been reported both publicly and privately, including by musicians known to me personally, that Mr. Carney has solicited numerous women in the orchestra for sex. It is well known that oboist Katherine Needleman rejected his advances 20 years ago and that he has made her working life unnecessarily difficult since that time."

See Exhibit "B" hereto.

See, also, Needleman's discrimination Complaint filed with the "HRC", a copy of which is annexed to the Bernstein Aff. as Exhibit "C". Needleman also filed a Complaint before the Equal Employment Opportunity Commission ("EEOC") regarding Carney's

sexual harassment and abusive conduct. A copy of the 12-page sworn declaration she filed at the EEOC is annexed to the Bernstein Aff. as Exhibit "D". Public documents regarding Needleman's Complaint to the HRC and her declaration filed at the EEOC make Plaintiff's claim regarding this allegation unsustainable. Furthermore, the Court may take judicial notice of the Complaint filed with HRC and her declaration with the EEOC. These agencies are considered quasi-judicial agencies sharing characteristics of a court and with respect to documents filed at the EEOC and HRC, such as affidavits and complaints, the documents should be treated as if they were filed with the court for purposes of taking judicial notice of such documents. *See, Glob. Network Commc'ns., Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (Court may take judicial notice of affidavits filed in another court); *We the Patriots, USA, Inc. v. Hochul*, 17 F.4th 266, fn. 3 (2d Cir. 2021).

In addition, the reference that Carney lied to investigators regarding Needleman is not an actionable defamatory statement since it is vague and misstates the Letter, which states that "Carney initially lied about his actions to investigators, ultimately admitting to propositioning Needleman ...." Plaintiff does not identify what facts are allegedly false, and how they are false. See also, the statement in the article attached to the Bernstein Aff. at Exhibit "E".

Also, despite Carney's mischaracterization, the Letter does not state that Carney reserved substitute violin appointments in the BSO for women who would sleep with him. Again, Plaintiff removed words to alter context. The Letter states that "multiple sources have indicated that several string sub-positions were reserved for women who would sleep with him." St. John does not state a fact here; but states that sources have made such claims.

The next "statement," that "one musician expressed shock at the lewd comments [Carney] made about her breasts when she was a student" is not a defamatory statement of fact. Reporting that a musician stated that Carney made lewd comments is nothing more than one person's opinion and cannot be characterized as a "false" factual statement by St. John.

At Paragraph 14 of the Complaint, Plaintiff attempts to articulate that he is being accused by St. John of nepotism; however the Letter solely states that St. John has read "at least two orchestra personnel managers were unhappy about this flagrant nepotism," which follows the sentence that Carney reportedly took steps to ensure that his girlfriend, who later became his wife, could perform in the orchestra without submitting to the usual audition process. St. John's Facebook page carries the same statement and context. These words do not constitute actionable defamation; and it is highly improper for the Plaintiff to remove words regarding context in making his claim.

Finally, it is alleged that St. John published a copy of the Letter on her Facebook page, which similarly, for the reasons set forth above, and as more fully explained below, does not constitute defamation.

## FACTS

### A.  Parties

Carney is, upon information and belief, an individual residing in Baltimore Maryland. (Complaint, ¶8). He is a well-known musician, who has been a Concertmaster of the BSO for more than twenty-four (24) years. (Complaint, ¶¶ 1 and 8). In addition, Carney maintains an international reputation as a concert violinist and Concertmaster and is a public figure

(Complaint ¶2). Indeed, his tenure, however, has been marked by investigations, allegations, complaint filings, which are a part of the public record. See Bernstein Aff. at Exhibit "E".

In early 2025, and because he is a public figure, Carney and BSO announced to the public that Carney would be retiring as Concertmaster at the end of the 2026-2027 season and would thereafter be named Concertmaster Laureate of the BSO.

Defendant St. John is a resident of New York City and is a professional violinist whose credits include recordings of classical music and appearances with orchestras throughout the world. (Complaint, ¶4)

## B.    The January 29th Commentary

According to the Complaint at ¶12, on January 29, 2025, "St. John published a commentary on her Facebook page" stating that:

> "It is appalling to me that this Carney concertmaster is now allowed to retire with heaps of laurels, while a lot of women have been harassed and abused by this guy. It is well known that he asked many women in the orchestra for sex."

Plaintiff concedes that St. John's January 29th post was commentary (Complaint at ¶12). Commentary is defined as an expression of opinions or offering of explanations about an event or situation. See, Miriam Webster Dictionary and Oxford's English Dictionary.

## C.  The St. John Letter to the BSO.

On February 19, 2025, St. John sent a letter (the "Letter") to Mark C. Hanson, President and CEO of the BSO to express her profound disappointment that the BSO is permitting Plaintiff Concertmaster Carney to retire with honors from the BSO despite his reported actions and conduct while serving the BSO in various capacities, including as Concertmaster. St. John also requested in the Letter that the BSO retain an impartial expert

to investigate the claims asserted by women involving Carney and report the results of that investigation to the public.

The Letter to the President and CEO of the BSO concerned the BSO, its Concertmaster Carney, and St. John's objection to the BSO granting Carney prestigious honors upon retirement in light of his reported conduct. St. John's Letter is also subject to a qualified privilege under New York law. A qualified privilege extends to communications made by one person to another upon a subject in which they both have an interest so as not to impede the flow of information between persons sharing a common interest. *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992).

Indeed, Courts have long recognized that the public interest is served be shielding certain communications, even if they may be defamatory, from litigation, rather than stifling them altogether. Id. at 437 (citing *Bingham v. Gaynor*, 203 N.Y. 27, 31 (1911)).

As a professional, international violin soloist, performing around the world for 50 years, speaking out about maintaining the fairness and objectivity of the renowned BSO, gives St. John a common interest with Mr. Hanson as it relates to the treatment of musicians in its orchestra, how reports of any misconduct are handled by the BSO and maintaining the reputation of the BSO.

Her opinions and statements, as set forth in the Letter, were also published on St. John's Facebook page. The publication on Facebook similarly does not give rise to a defamation cause of action. First, expressing her disappointment in honoring Carney is not actionable. Her use of the term sexual predator is similarly non-defamatory, since it refers to persons who engage in predatory behavior such as seeking sexual contact in a non-consensual way or abusive way, or who habitually seeks out sexual situations that are deemed

exploitive. Indeed, the reports of requesting sex and creating a hostile work environment if refused is consistent with the term. St. John referred to two BSO members known to her personally. One of these individuals is Katherine Needleman, who filed a claim with the HRC and the EEOC, in which she alleged sexual harassment by Carney and the improper handling of her sexual harassment complaint by the BSO. Needleman had reported Carney's harassment to the BSO as early as 2018 and she complained of his continuous "pattern of harassment." Needleman also shared in the public domain her experience with, and treatment by Carney, and questioned the BSO as to their basis to provide Carney with an accolade upon his retirement.

Another former member of the BSO for 47 years, Laurie Sokoloff, also publicly posted her opinions regarding the harassing conduct of Carney against the female members of the BSO.

The Letter also states that it has been <u>reported</u> that Carney has solicited women in the orchestra for sex. The reference to the reports is not defamatory and even if he did not ask women of the orchestra for sex, such statement is not itself defamatory.

Finally, St. John's opinion about Carney's violin performance is classic opinion and cannot be alleged, in good faith, to constitute defamation.

## **ARGUMENT**

Pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, a Court considering a motion to dismiss must determine whether the Complaint "contains(s) sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" citing, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In order to avoid dismissal under Rule 12(b)(6) … a plaintiff must state

the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 265, 265 (S.D.N.Y. 2013) (Biro II), *aff'd*, 3d 541(2d Cir. 2015) (*Biro III*).  Threadbare recitals of the elements of cause of action, supported by mere conclusory statements, do not suffice.  *Reid v. McKelvey*, No. 22-cv-10708 (JGLC) (OTW), 2024 U.S. Dist. LEXIS 176975, 2024 WL 4345585, at *2 at S.D.N.Y. (Sept. 30, 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "Because a defamation suit may be as chilling to the exercise of first amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage." *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017).

Plaintiff annexed to his Complaint, a copy the Letter.  (See Bernstein Aff., Exhibit "B").  The Court may consider documents incorporated by reference or attached to the Complaint and extrinsic material integral to the Complaint.  *Chambers v. Time Warner*, 282 F.3d 147, 152-53 (2d Cir. 2002).[2]

Under New York law, the elements of a claim for defamation are (1) a defamatory statement of fact concerning the Plaintiff, (2) publication to a third-party, (3) the applicable level of fault, (4) falsity and, (5) special damages or a showing of libel *per se*.  *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 176 (2d Cir. 2000); *see also, Kesner v. Dow Jones & Co.,* 515 F. Supp. 3d 149, 169-70 (S.D.N.Y. 2021) (*quoting, Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)).  Plaintiff, a public figure, has a higher burden

---

[2] Plaintiff annexed a copy of the Letter to his Complaint, a letter he claims is defamatory.  Indeed, by attaching a copy of the Letter to his pleading, the Plaintiff voluntarily published the Letter as a public document.  Plaintiff's public filing of the Letter is, at least, a tacit admission that the Letter is not defamatory.

to plead a defamation claim, and has failed to allege the factual elements necessary to state a defamation claim. As such, his claim must be dismissed.

1. **Statement of Facts**

The first of the five elements is whether the statements made by St. John constitute a "defamatory statement of fact". *Celle*, 209 F.3d at 176. In this regard, the Court is required to determine whether the alleged statements were fact, opinion, or rhetorical hyperbole. *Delgado v. Sonnen*, 2025 U.S. Dist. LEXIS 62612 *12; 2025 WL 1042343 (S.D.N.Y. Feb. 18, 2025); *Rapaport v. Barstool Sports, Inc.*, No. 22-2080-CV, 2024 U.S. App. LEXIS, 556, 2024 WL 88636, at *2 (2d Cir. Jan. 9, 2024). This determination as to whether the alleged defamatory statement is opinion, hyperbole or fact is a question of law for the Court. Id.

In distinguishing between opinion and fact, New York Courts generally consider: (1) whether the language at issue has a precise meaning which is readily understood; (2) whether the statement is capable of being proven true or false; and (3) whether the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers that what is being read is likely to be opinion and not an actual statement of fact. *Delgado* at *11. Furthermore, the analysis by the Court should be a consideration of the overall context and not simply a mechanical application of each factor. *Delgado* at *11; *Flamm v. Am. Ass'n. of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000) (citing, *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995).

The Court may consider the Complaint, documents attached to it, namely the February 19, 2025 letter from St. John to Mark C. Hanson of the BSO, and extrinsic material incorporated by reference. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). If a document is not attached or incorporated by reference, Courts may still consider it where

the Complaint, "relies heavily on its terms and effect, thereby rendering 'integral' to the complaint." Id. (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

Moreover, in determining the overall context of an alleged defamatory statement the Court, in addition to looking at the statement itself, will examine the forum in which the statement was made. *See, Rapaport v. Barstool Sports, Inc.* at *11, *aff'd*. No. 22-2080-CV, 2024 U.S. App. LEXIS, 556, 2024 WL 88636 (2d Cir. Jan 9, 2024) (considering the overall context of statements made across several platforms). Here, the Complaint alleges that the statements were published on St. John's Facebook page. (Complaint at ¶12). Generally, the posting of a statement on a social media platform tips in favor of a reasonable reader understanding the statement as an expression of opinion and not fact. *See*, *Rapaport*, 2021 U.S. Dist. LEXIS 59797, 2021 WL 1178240, at *12 ("comments ... made on freewheeling internet fora, such as blogs or social media cites, which courts have generally found to be a persuasive factor in holding that a statement would be understood by readers as reflecting the author's opinion.")

### The St. John Letter to the BSO is Privileged

The Letter, a copy of which is annexed to the Complaint and to the Bernstein Aff. as Exhibit "B," does not state false facts, but is a letter from a musician, a private citizen critical of the BSO and Carney concealing reports of his reported objectionable conduct by permitting him to retire at the end of the 2026-2027 season with the extraordinary honor and title of "Concertmaster Laureate of the [BSO]". (Complaint at ¶3) Plaintiff deletes the actual words used by St. John in the Letter and sanitizes the context of her statements. Specifically,

the allegations at ¶18 of the Complaint intentionally misstate the words in the Letter and their context in an effort to create a claim of defamation to chill St. John's public criticism.

The Letter begins that St. John wishes to "express [her] profound disappointment at the Baltimore Symphony Orchestra in permitting concertmaster Jonathan Carney to retire with honors from the Orchestra …." St. John's reference to a reputation as a sexual predator is explained in the Letter as having "been reported both publicly and privately including by musicians known to [St. John] personally that Mr. Carney has solicited many women in the orchestra for sex." The introduction of this sentence of the second paragraph fully demonstrates that the alleged defamatory statement was not intended, nor could it be interpreted by a reasonable reader, as a defamatory statement of fact. The sentence states that it has "been reported … that Mr. Carney has solicited many women in the orchestra for sex." The reference that "it has been reported" makes the letter non-defamatory on its face and not actionable.

In addition, the Letter further states that oboist Katherine Needleman, a musician known to St. John personally, rejected Carney's advances 20 years ago and he made her working life unnecessarily difficult, which led to Needleman filing a complaint with the HRC and the EEOC in 2018. A copy of the documents obtained from the HRC and the EEOC regarding Needleman and Plaintiff Carney are annexed to the Bernstein Aff. as Exhibits "C" and "D" and should be considered since Plaintiff attached to his Complaint, a copy of the Letter, which makes specific reference to Needleman, and the issues that were investigated by the HRC. As such, the Commission documents and investigation and are integral to the Complaint.

The next paragraph of the Letter states "multiple sources have indicated that several string sub positions were reserved for women who would sleep with [Carney]." In his Complaint at 18(e), Carney deleted the words in the Letter that "multiple sources have indicated" regarding reserved substitute violin appointments, which is intended to make it appear that the Letter stated a false fact when it does not. The Letter goes on to make reference to other complaints voiced by musicians of the BSO involving Carney and does not make statements of fact regarding the underlying allegations. The Letter does not state that Carney "reportedly took steps to ensure that his girlfriend, who later became his wife, could perform in the orchestra without submitting to the usual audition process." Again, St. John does not make a statement of fact here, but refers to reports that musicians have reported such nepotism and St. John writes about her disapproval of nepotism, as reported. St. John also expresses her personal opinion, as a concert violinist, that she listened to a recording of Carney's playing of Vivaldi's *Winter*, and she states that he was "literally unable to perform Vivaldi's *Winter*, and his rendition of the Bruch *Violin Concerto* was executed at a mediocre student level." No reasonable reader could confuse these words of opinion expressed by St. John as defamatory statements of fact.

St. John further states in her Letter that, as reported recently in the Baltimore Banner, board member Stephen Shawe admitted that Mr. Carney "is not a choirboy and claims to have reprimanded him for his behavior." See Bernstein Aff. at Exhibit "E" regarding *The Baltimore Banner* reports. St. John questions the propriety of whether Mr. Shawe is the proper person to handle any effort to discipline Mr. Carney and strongly urges Mr. Hanson to initiate a new investigation into Carney's behavior and that such investigation be conducted by an impartial expert and to make the results of that investigation public. The

urging by St. John to the BSO to conduct a thorough investigation militates against any conclusion that her statements are defamatory.

This Letter to the BSO is not actionable and is nothing more than St. John's opinion, her quest to have the BSO conduct a proper investigation, and her references to reports by musicians in the BSO regarding Carney. Furthermore, statements that Carney made the working life of Needleman unnecessarily difficult or that he lied to investigators, fostered a toxic working environment, or made "lewd comments", are all vague and therefore not actionable. *See, Rapaport*, 2021 U.S. Dist. LEXIS 59797, 2021 WL 1178240, at *14 (citing *Eros Int, PLC*, 191 A.D.3d 465, 140 N.Y.S.3d 518 (1st Dep't 2021).

To be clear, Plaintiff commenced this Strategic Lawsuit Against Public Participation ("SLAPP") for the purpose of threatening or silencing St. John's critical speech. And, there is little question that Plaintiff is a public figure.

To protect the right to freedom of speech, the Supreme Court held in *New York Times v. Sullivan*, 376 U.S. 254 [1964], that public officials (and applied to public figures) who sue for defamation must prove that the Defendant acted with "actual malice." This protection of free speech was further broadened in New York with its enactment of the SLAPP statute – targeting so-called "strategic lawsuit against public participation," filed in retaliation for the exercise of First Amendment rights. The New York SLAPP statute permits a Defendant, like St. John, who claims she is being sued for her First Amendment activities – the Letter and published commentary – to file an anti-SLAPP motion before discovery. To prevent a dismissal of his claim, Plaintiff here must show – before discovery – a probability of success on the merits. Indeed, Plaintiff is required to demonstrate, on this motion, that he would likely present clear and convincing evidence at trial that St. John acted with actual malice.

Under the expanded Anti-SLAPP Law, Plaintiff may not recover damages unless he shows by clear and convincing evidence that St. John made statements knowing that such statements were false or with reckless disregard as to whether those statements were false. N.Y. Civ. Rights Law Section 76-a(2). The U.S. Supreme Court has long held that the First Amendment requires libel plaintiffs who are public figures to satisfy this high standard of fault, known as actual malice. Under the *Times* malice standard, the Plaintiff must demonstrate that the "statements [were] made with [a] high degree of awareness of their probable falsity." *Liberman v. Gelstein*, 80 N.Y.2d 429, 438 (1992), citing *Garrison v. Louisiana*, 379 U.S. 64, 76 (1964). There "must be sufficient evidence to permit the conclusion that the Defendant in fact entertained serious doubts as to the truth of [the] publication." *Liberman*, 80 N.Y. 2d at 350; *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), which is absent here. If the Plaintiff fails to carry his burden in response to Defendant's motion, the Court must dismiss the Complaint.

Finally, Plaintiff's factually unsupported claims are belied by the public record. Bernstein Aff. at ¶9.

### The Court Must Decide if Words are Susceptible to the meaning Ascribed to them by Plaintiff.

"Whether particular words are defamatory presents a legal question to be resolved by the court[s] in the first instance." *Celle,* 209 F.3d at 177 (alteration in original) (quoting *Aronson v. Wiersma*, 65 N.Y.2d 592, 593 (1985)); *see, also James v. Gannett Co.*, 40 N.Y.2d 415, 419 (1976). ("[I]t is for the court to decide whether the words are susceptible of the meaning ascribed to them."). Though "[i]t is the responsibility of the jury to determine whether the plaintiff has actually been defamed, … a threshold issue for resolution by the

court is whether the statement alleged to have caused plaintiff an injury is reasonably susceptible to the defamatory meaning imputed to it." *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997) (internal citations omitted).

Plaintiff also fails to allege any facts to demonstrate that these statements are untrue. See, *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) ("Because falsity is an element of New York's defamation tort, and 'falsity' refers to material not substantially true, the complaint in this case must plead facts, that if proven, would establish that the defendant's statements were not substantially true.") No such facts are pled here.

Plaintiff's claim as to the Facebook post is on even shakier ground. Plaintiff characterized the Facebook post as commentary, which is defined as an expression of opinion. And, St. John's Facebook statement that "[H]e was literally unable to perform Vivaldi's *Winter*, and his rendition of the Bruch concerto was mediocre student level, at best," is not a defamatory statement of fact. In fact, to assert that St. John's opinion about his violin performance, which she heard and characterized as "mediocre student level, at best" "Dude sucks at violin" is clearly her opinion and nothing more.

### The Letter and Posts are Privileged as Fair Report of Official Proceedings

To the extent Plaintiff objects to any reporting of the allegations set forth in the HRC, such letter and/or report by St. John is privileged. *See*, N.Y. Civ. Right Law §74 (McKinney 2023). Section 74 of the Civil Rights Law provides, in relevant part, that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding." N.Y. Civ. Rights Law §74. "New York courts adopt a 'liberal interpretation

of the fair and true report standard of Section 74 so as to provide broad protection to news accounts of official proceedings'". *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2917) (*quoting, Becher v. Troy Publ'g Co.*, 183 A.D.2d 230, 233 (3d Dep't 1992)).

In the unanimous decision, written by Justice William Brennan, Jr., the U.S. Supreme Court ruled in favor of the *New York Times* finding that public figures face a higher standard for proving libel. Essentially, a public figures does not only have to prove that the things written about them were untrue and damaged their reputation, they also must show and prove that the person who wrote them knew the statements were untrue but published them anyway. The Court recognized the debate on public issues should be uninhibited, robust and wide open. Against this backdrop, the Court's held that the First Amendment was more important than a public official's reputation even if there are "half-truths" or "misinformation" involved.

A rule compelling the critic of official conduct to guarantee the truth of all of his or her factual allegations and to do so under pain of libel judgments, virtually unlimited in amount, leads to a comparable self-censorship. Therefore, the Court held that an official, or public figure, can only recover damages for defamation if they prove the statement was made with actual malice – that is with actual knowledge that it was false or with reckless disregard of whether or not it was false. It is not enough to simply make the allegations, but facts to support that allegation must be pled. In *Gertz v. Robert Welsh, Inc.*, 418 U.S. 323 (1974).

**<u>The Complaint Fails to Plead Facts to Support an Allegation of Actual Malice</u>**

The Complaint also fails because it does not plausibly allege facts to establish that Defendant acted with actual malice. Plaintiff's claims are subject to New York's Anti-SLAPP law, which was amended in 2020 by the New York legislature to "broaden" its scope.

*Sweigert v. Goodman*, No. 18-cv-08653, 2021 WL 1578097, at *1 (S.D.N.Y. Apr. 22 2021).
The amendment "substantially broadened the reach of the actual malice rule," *Palin v. N.Y.
Times Co.*, 510 F. Supp. 3d 21, 25 (S.D.N.Y. 2020), such that it applies to cases arising from
"lawful conduct in furtherance of the exercise of the constitutional right of free speech in
connection with an issue of public interest." N.Y. Civ. Rights Law §76-a. Section 76-a
applies to this diversity action. *See, e.g., Palin*, 510 F. Supp. 3d at 25; cf. *La Liberte v. Reid*,
966 F.3d 79, 86 n.3 (2d Cir. 2020).[3]

Plaintiff is a public figure who is required to prove actual malice. *See, James v. Gannett
Co., Inc.*, 40 N.Y. 2d 415, 422 (1976) ("[t]he essential element underlying the category of public
figures is that the publicized person has taken an affirmative step to attract public attention.")

The "public interest" provision should be construed broadly, and shall mean any subject
other than a purely private matter. N.Y. Civ. Rights Law §76-a(b). It is beyond dispute that a
letter and post concerning the alleged misconduct of Carney as reported are matters of public
interest and concern. *See, Shuman v. N.Y. Mag.*, 2021 WL 3161629, at *2 (N.Y. Sup. Ct. June
15, 2021), *aff'd*, 211 A.D. 3d 558, (1st Dep't 2022) ("[A]ccounts of ... of sexual harassment ...
at well- known academic institutions are matters of social concern to the public.")

Plaintiff must, therefore, plausibly allege <u>facts</u> that Defendant acted with actual malice.
The Second Circuit has affirmed that to allege actual malice, a Plaintiff "must plead, 'plausible
grounds' to infer actual malice by alleging 'enough fact[s]' to raise a reasonable expectation that
discovery will reveal evidence of actual malice." *Biro III*, 807 F.3d at 546 (alteration in original)

---

[3] Indeed, Plaintiff describes himself in the Complaint as a well-known musician who has been
concertmaster of the BSO for more than 24 years and enjoys an international reputation as a concert
violinist and concertmaster with orchestras and other musical events at venues all over the world
(Complaint ¶¶1 and 2).

(*quoting, Twombly*, 550 U.S. at 556). Actual malice requires "clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n.30 (1984). Allegations of actual malice that are no more than "pure speculation" and are "supported not by fact but by only conclusory statements" are insufficient grounds to infer actual malice. *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020) (dismissing defamation claim because plaintiff's allegations of personal bias were insufficient to show actual malice). Plaintiff's conclusory allegations of actual malice do not meet this high standard.

The actual malice standard is intentionally a high bar. Plaintiff does not adequately allege that St. John knew her statements were false, other than making conclusory assertions that "St. John's statements are false and were made with actual knowledge of their falsity or with reckless disregard for the truth of such statements." (Complaint ¶20). Plaintiff provides no additional supporting facts to indicate St. John's subjective state of mind, which is fatal to his pleading. *See, Bobulinski v. Tarlov*, 758 F. Supp. 166, *21-24 (S.D.N.Y. 2024).

New York's Anti-SLAPP Law applies to all protected expression on matters of public interest. The actual malice standard applies here because Carney is a public figure and/or St. John's comments were about "an issue of public interest," to which New York "anti-strategic litigation against public participation" ("SLAPP") law applies the actual malice standard. *Bobulinski*, 758 F. Supp. at *8; N.Y. Civ. Rights Law §76-a(2).

The New York legislature has directed courts to construe an issue of public interest "broadly," meaning "any subject other than a purely private matter." N.Y. Civ. Rights Law §76-a(1)(d); *Bobulinski*, 758 F. Supp. at *18.

## LEGAL FEES

St. John respectfully requests that she be granted legal fees pursuant to N.Y. Civ. Rights Law §70-a. Costs and attorneys' fees are recoverable upon a demonstration, including an adjudication, that the actual involved public petition was commenced or continued without a substantial basis in fact and law.

This Court should award Defendant her legal fees for bringing the motion to dismiss because Plaintiff did not plausibly allege that the Letter or Facebook post contained the defamatory implications ascribed to them, and therefore did not set forth a substantial basis for his claim (a higher standard).

In pertinent part, New York Civil Rights Law §70-a(l)(a) provides that "[a] defendant in an action involving public petition and participation ... may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; provided that . . . costs and attorney's fees *shall* be recovered upon a demonstration ... that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." *Id* (emphasis added). An "action involving public petition and participation" is defined as "a claim based upon: (l) any communication in a place open to the public or a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." N.Y. Civil Rights Law§76-a(l)(a)(l)-(2). The law further elaborates that "'[p]ublic interest' shall be

construed broadly, and shall mean any subject other than a purely private matter." *Id.* §76-a(l)(a)(2)(d).

Because (i) this substantive provision of New York law applies in this diversity case, (ii) the suit constitutes "an action involving public petition and participation," and (iii) Plaintiff's claims "w[ere] commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law," this Court should award Defendant reasonable attorneys' fees and costs.

## I.  DEFENDANT SHOULD BE AWARDED REASONABLE FEES

### A.  New York Civil Rights Law §70-a Applies to This Action

New York's mandatory fee-shifting provision is substantive law that applies to this federal diversity action. Since the landmark case of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938), federal courts sitting in diversity apply "state substantive law and federal procedural law." *Hanna v. Plumer,* 380 U.S. 460, 465 (1965). Because "[t]he Second Circuit has consistently held that provisions for attorney's fees are a substantive, not procedural, right," *Bobulinski v. Tarlov,*758 F. Supp. 3d 166, and because the applicable New York law does not conflict with a federal procedural rule-i.e., no federal procedural rule "answers the question in dispute" of whether Defendant is entitled to attorney's fees, *see, Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 398 (2010)-the New York law governs here. Most recently, Judge Oetken of this District undertook a thorough analysis of this precise issue and determined that, "whether or not a court were to determine that Section 70-a(1) has some procedure bound up with the substantive right, its provision for attorney's fees applies in federal court." *Bobulinski v. Tarlov,* 2024 WL

4893277; *cf. Prince v. Intercept,* 634 F. Supp. 3d 114, 138 n.26 (S.D.N.Y. 2022) ("New York's amended anti-SLAPP statute is applicable to this action."); *Bobulinski v. Tarlov,* 758 F. Supp. 3d 166, \*36 (S.D.N.Y. 2024); *Palin v. NY. Times Co.,* 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020) (same); *Sweigert v. Goodman,* No. 18-cv-8653, 2021 WL 1578097, at \*2 (S.D.N.Y. Apr. 22, 2021) (same); *cf. Adelson v. Harris,* 774 F.3d 803, 809 (2d Cir. 2014) (holding that the application of the "substantive" fee-shifting provision of Nevada's anti-SLAPP statute "unproblematic"); *La Liberte* v. *Reid,* 966 F.3d 79, 86 N.3 (2d Cir. 2020) (finding a procedural element of California's anti-SLAPP statute inapplicable and noting that substantive and procedural elements of anti-SLAPP statutes must be treated differently).

 Judge Oetken's compelling decision further concluded that the Section 70-a(l) direction that a "defendant . . . may *maintain* an action . . . to recover damages, including costs and attorney's fees," N.Y. Civil Rights Law§70-a(l) (emphasis added), by its clear language permits a prevailing defendant to seek attorneys' fees in the original action rather than needing to bring a separate action or counterclaim. *Bobulinski,* 2024 WL 4893277, at \*16. This result is in accordance with the "clear intent" of the New York legislature, particularly in drafting the amendments to this provision in 2020, to allow Defendant to "expeditiously halt SLAPP claims and recover attorney's fees and costs without the burden of the same protracted litigation that [the anti-SLAPP statute] was designed to combat." *Id.* (quoting *Isaly v. Garde,* 83 Misc. 3d 379, 389 (Sup. Ct. N.Y. Cty. 2024)).

 In short, Judge Oetken was correct that the mandatory fee-shifting provision of the New York Anti-SLAPP law both applies in this Court and can be used to recover fees in this action provided that the anti-SLAPP statute, by its own terms, applies to this action.

## B. **This Is an Action Involving Public Petition and Participation**

There can be no serious dispute that the present case is "an action involving public petition and participation." N.Y. Civil Rights Law §70-a(l). The law defines such an action as "a claim based upon: (1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." N.Y. Civil Rights Law§76-a(l)(a)(l)-(2). The term "public interest" is to "be construed broadly, and shall mean any subject other than a purely private matter." *Id.* §76-a(l)(a)(2)(d). As courts in this District have noted, this statutory language was part of a 2020 amendment by the New York Legislature expanding the definition of a qualifying action and thus broadening the anti-SLAPP act's reach. *See, Sweigert,* 2021 WL 1578097, at *1; *Palin,* 510 F. Supp. 3d at 25.

The Letter and Facebook post concerning the reported conduct of Carney and the joint announcement by Carney and the BSO that the BSO would bestow upon Carney the title of Concertmaster Laureat upon his retirement gave St. John the right to question the BSO's decision and request an investigation into the reports asserted against Carney and is undoubtedly a matter of public concern under the statute. *Cf Shuman v. N.Y. Mag.,* 2021 WL 3161629, at *2 (Sup. Ct. N.Y. Cty. June 15, 2021), ("[A]ccounts of sexual harassment ... at well-known academic institutions are matters of social concern to the public."), *aff'd,* 211 A.D.3d 558 (1st Dep't 2022). This case is therefore "an action involving public petition and participation" under section 70-a(l).

### C. Plaintiff Commenced This Suit Without Substantial Basis

We respectfully submit that Plaintiff's Complaint fails to state a claim upon which relief can be granted. And, in the event the Court makes such determination that Plaintiff's lawsuit is necessarily "without substantial basis," fees must be awarded." [T]he entitlement to attorney's fees under the New York anti-SLAPP law follows from the failure to state a claim as a matter of New York law." *Bobulinski,* 2024 WL 4893277, at *13. This is because "a complaint that fails to state a claim is, *a fortiori,* 'without a substantial basis in fact and law and could not be supported by a *substantial* argument for the extension, modification or reversal of existing law.'" *Id.* (emphasis in original) (quoting N.Y. Civil Rights Law §70-a(1)); *cf. Reeves v. Associated Newspapers, Ltd.,* 232 A.D.3d 10, 23-24 (1st Dep't 2024) (explaining that the "substantial basis" standard is higher than the pleading standard under New York law). Thus, as a matter of law, Plaintiff commenced and continues this suit without a substantial basis, and reasonable attorneys' fees and costs must be awarded. *See, Aristocrat Plastic Surgery P.C. v. Silva,* 206 A.D.3d 26, 29 (1st Dep't 2022) ("Civil Rights Law §70-a was amended to mandate, rather than merely permit, the recovery of costs and attorneys' fees upon demonstration 'that the [SLAPP] action . . . was commenced or continued without a substantial basis in fact and law'").

## II. DEFENDANT'S REQUESTED FEES ARE REASONABLE

This Court should award Defendant not less than $25,679.25 as an for attorneys' fees incurred in the preparation of the motion to dismiss in this case because those fees are reasonable.

In calculating the amount of attorneys' fees to award, the Second Circuit has adopted the "presumptively reasonable fee" standard, which requires the court to calculate "the number of

hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Harrell v. Van der Plas*, 2009 WL 3756327, at * (S.D.N.Y. Nov. 9, 2009) (Lynch, J.) (citation omitted); *see, Arbor Hill Concerned Citizens Neighborhood Ass 'n v. Cty. of Albany*, 493 F.3d 110, 111-12, 117- 18 (2d Cir. 2007) (noting that methodology of calculating the "presumptively reasonable fee" standard and the older "lodestar" standard are substantially the same), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008). In setting a reasonable attorneys' fee, courts should consider the amount of legal work performed by the prevailing party's attorneys, the skill of the attorneys, and the results achieved. *Earth Flag Ltd. v. Alamo Flag Co*, 154 F. Supp. 2d 663, 669 (S.D.N.Y. 2001). Each of these factors favor awarding legal fees to St. John.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court enter an Order dismissing the Complaint, with prejudice, and granting Defendant attorneys' fees pursuant to N.Y. Civil Rights Law §70-a(1).

Dated: Fort Lee, New Jersey
      June 8, 2025           Respectfully submitted,

           LAW OFFICES OF BRIAN K. BERNSTEIN, P.C.

           Brian K. Bernstein (NY Bar No. 1882182)
           2050 Center Ave., Suite 435
           Fort Lee, NJ 07024
           (201) 461-3800
           brianbernstein@bkbesq.com
           Counsel for Defendant Lara St. John

To:   Thomas A. Capezza, Esq.      Neil J. Ruther, Esq.
      Capezza Hill, LLP          14307 Jarrettsville Pike, Suite A
      30 Pearl Street, Suite P-110    Phoenix, Maryland 21131
      Albany, New York 12207      (667) 308-2134
      (518) 478-6065           nruther@rutherlaw.net
      tom@capezzahill.com       Counsel for the Plaintiff
      Counsel for the Plaintiff

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.l(c) is 7,493 words.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:  Fort Lee, New Jersey
       June 8, 2025

                LAW OFFICES OF BRIAN K. BERNSTEIN, P.C.

                Brian K. Bernstein (NY Bar No. 1882182)
                2050 Center Ave., Suite 435
                Fort Lee, NJ 07024
                (201) 461-3800
                brianbernstein@bkbesq.com
                Counsel for Defendant Lara St. John