UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
EDWARD JONATHAN CARNEY,

                                   Plaintiff,

                                                                    25-cv-2525 (LAK)

                      -against-

LARA ST. JOHN,

                                   Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
┌─────────────────────────────┐
│ USDS SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #: _____          │
│ DATE FILED: __10/20/2025__   │
└─────────────────────────────┘
```

**MEMORANDUM OPINION**

                      Appearances:

                              Thomas Capezza
                              Alexandra Von Stackelberg
                              CAPEZZA HILL, LLP

                              Neil J. Ruther

                              *Attorneys for Plaintiff*

                              Brian K Bernstein
                               LAW OFFICES OF BRIAN K. BERNSTEIN P.C.
                              *Attorney for Defendant*

LEWIS A. KAPLAN, *District Judge.*

                      This defamation case arises from a Facebook post and letters published by defendant

Lara St. John, a concert violinist, in which she made various allegations against plaintiff Edward

Jonathan Carney, concertmaster of the Baltimore Symphony.  St. John moves to dismiss the

Amended Complaint and for attorney's fees and costs.

2

***Facts***[1]

        In early 2025, the Baltimore Symphony Orchestra ("BSO") announced that Carney, its longtime concertmaster, would be retiring at the end of the 2026-27 season and thereafter would be named concertmaster laureate.[2]

        After the announcement, St. John published a post on her Facebook page (the "January 29 Post") lamenting "that this Carney concertmaster is now allowed to retire with heaps of laurels."[3]  The January 29 Post included several allegations about Carney, including alleged sexual misconduct.  A few weeks later, St. John sent a letter to the president and chief executive officer of the BSO (the "February 19 Letter"), which she posted to Facebook as well, urging him to initiate a new investigation into Carney's behavior.[4]  Like the January 19 Post, the February 19 Letter levied several allegations of sexual misconduct against Carney.   St. John later published another letter (the "February 28 Letter") alleging that Carney "was a predator for decades."

        On March 27, 2025, Carney brought this action against St. John.[5]  The Amended

---

[1]         At this stage, the Court assumes the truth of the well-pleaded factual allegations of the Complaint and draws all reasonable inferences in the plaintiff's favor.  See *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019).

[2]         Dkt 22 ("Am. Compl.") at 1.

[3]         Dkt 22-1 at 1.

[4]         *Id.* at 2.

[5]         Dkt 1.

3

Complaint identifies 13 statements (the "Challenged Statements") in the January 29 Post, February

19 Letter, and February 28 Letter that he alleges are false:[6]

- Statement 1: "It is appalling to me that this Carney concertmaster is now allowed to
  retire with heaps of laurels, while a lot of women have been harassed and abused
  over a period of decades by this guy.  It's well known that he asked many women in
  the orchestra for sex."[7]

- Statement 2: A musician "became his mistress, then second wife, and he broke down
  any sort of audition requirements so that she could play in the orchestra without
  needing to audition."[8]

- Statement 3: Carney plays violin at a "mediocre student level, at best" and "Dude
  sucks at violin."[9]

- Statement 4: Carney has a "longstanding reputation as a sexual predator who is
  known for actively fostering a toxic working environment."[10]

- Statement 5: "It has been reported both publicly and privately, including by
  musicians known to me personally, that Mr. Carney has solicited numerous women

---

[6]

    Am. Compl. ¶¶ 5–11; *id.* at ¶ 12 ("Each of the statements recited in Paragraphs 5 through 11 hereof is false . . . .").  The Amended Complaint itself paraphrases or misquotes some of the Challenged Statements.  The statements themselves, however, are attached to the Amended Complaint, and the Court quotes them directly.

[7]

    Am. Compl. ¶ 5; Dkt 22-1 at 1.

[8]

    Am. Compl. ¶ 6; Dkt 22-1 at 1.

[9]

    Am. Compl. ¶ 7; Dkt 22-1 at 1.

[10]

    Am. Compl. ¶ 10; Dkt 22-1 at 2.

4

in the orchestra for sex."[11]

• Statement 6: "It is well known that oboist Katherine Needleman rejected his advances 20 years and that he has made her working life unnecessarily difficult since that time."[12]

• Statement 7: "When the matter [involving Needleman] was investigated in 2025, Mr. Carney initially lied about his actions to investigators, ultimately admitting to propositioning Needleman only after he was divorced from his wife years later."[13]

• Statement 8: "Multiple sources have indicated that several string sub positions were reserved for women who would sleep with him."[14]

• Statement 9: "One musician expressed shock at the lewd comments he made about her breasts when she was a student."[15]

• Statement 10: "Another [musician] obtained a restraining order against him."[16]

• Statement 11: "He reportedly took steps to ensure that his girlfriend, who later became his wife, could perform in the orchestra without submitting the usual

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

audition process."[17]

- Statement 12: "He has an established record as an untruthful sexual predator and workplace tyrant."[18]

- Statement 13: Carney "was a predator for decades."[19]

St. John now moves, pursuant to Rule 12(b)(6), to dismiss the Amended Complaint.[20] The motion is accompanied by an affirmation of St. John's attorney, several exhibits, and a memorandum of law. Her reply memorandum in support of the motion attached another attorney affirmation and additional exhibits.

## *Discussion*

### I.    *Legal Standard*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[21] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] In deciding

---

[17]    *Id.*

[18]    *Id.*

[19]    Am. Compl. ¶ 11.

[20]    Dkt 26.

[21]    *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[22]    *Iqbal*, 556 US. at 678.

6

a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.[23]

## II.    Materials Considered

As an initial matter, the Court addresses what materials properly may be considered at this stage.  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  Where a document is not incorporated by reference, the court may neverless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[24]

Here, the January 29 Post and the February 19 Letter are attached to the Amended Complaint, and the Court therefore may consider them at this juncture, albeit not for the truth of the matters asserted therein.[25]

St. John's submissions are another matter.  With respect to the initial moving papers, the attached attorney affirmation[26] includes legal argument regarding the substance of the motion. Such argument should have been confined to the memorandum of law and subject to the

---

[23]

See *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001).

[24]

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

[25]

*Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015).

[26]

Dkt 26-1.

corresponding length limitation.[27]  The Court therefore does not consider the arguments raised in the moving affirmation except where they appear also in plaintiff's memorandum of law.  The remainder of the affirmation concerns St. John's claim to entitlement to attorney's fees, which is immaterial in light of the disposition of this motion.  The moving papers attach also a copy of the February 19 Letter.[28]  That copy is identical in substance to the version attached to the Amended Complaint,[29] which is properly before the Court as noted above.

With respect to St. John's reply papers, the attorney's second affirmation refers to four attached exhibits: a complaint filed with the Maryland Commission on Human Rights,[30] a declaration filed with and a letter to the Equal Employment Opportunity Commission,[31] and an article from "The Violin Channel."[32]  Each of the documents refers to alleged misconduct by Carney.

Under Rule 12(d), presentation on a motion to dismiss of materials outside the four corners of and not incorporated in the complaint — unless they are excluded by the court for purposes of the motion — requires that the motion be converted into one for summary judgment. Among other things, that (a) restricts the court to consideration only of evidence that would be

---

[27]     *See* Local Civ. R. 7.1.

[28]     Dkt 26-4.

[29]     Dkt 22-1 at 2.

[30]     Dkt 32-2.

[31]     Dkts 32-3, 32-5.

[32]     Dkt 32-4.

admissible at trial,[33] and (b) requires that "[a]ll parties . . . be given a reasonable opportunity to present all the material that is pertinent to the motion,"[34] which often involves pretrial discovery.

St. John argues that the Court may take judicial notice of the statements made in these documents without converting the motion into one for summary judgment.  In deciding a motion to dismiss, "it is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents . . . ."[35] But this doctrine at most would allow for the Court to consider these documents for the fact that they contain certain statements, not for the truth of the statements they contain.

Even if the requirements for judicial notice were met, however, the Court as a general matter does not consider materials submitted for the first time in connection with a reply brief, particularly where those materials were available to a litigant at the time the original motion was filed.[36]  Here, there is no justification for submitting these exhibits for the first time in reply, at which point the opposing party has had no opportunity to respond to them.

Accordingly, the Court excludes plaintiff's attorney's affirmations and the exhibits attached to her reply brief in deciding this motion.

---

[33]  *See Presbyterian Church Of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009).

[34]  Fed. R. Civ. P. 12(d).

[35]  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424 (2d Cir. 2008).

[36]  *Cordero v. Polar Electro Inc.*, No. 1:22-CV-5688 (MKV), 2023 WL 5390246, at *3 (S.D.N.Y. Aug. 21, 2023)

*III.     Governing Law*

The parties dispute whether New York or Maryland law governs the defamation claim at issue, to the extent state law supplies the rule of decision.  Regardless of which state law governs, in such circumstances, "the First Amendment protects certain defamatory speech and thus may provide a defendant with a defense to liability."[37]

"In diversity cases, federal courts apply the choice of law rules of the forum state, in this case, New York."[38]  "Under that regime, the Court must first determine whether there is a conflict between the defamation laws of New York" and Maryland.[39]  If there is a conflict, "the Court must turn to New York's choice of law rules to determine which state's law should govern this action."[40]

Carney argues that there are substantive and critical differences in the laws of the two jurisdictions governing defamations actions.[41]  Although St. John contends that disposition of this motion would be the same under New York or Maryland law, she does not dispute that there are meaningful differences between their respective laws.[42]  Indeed, among other salient differences,

---

[37]

*Fowler v. Am. Law. Media, Inc.*, 46 F. App'x 54, 54 (2d Cir. 2002).

[38]

*Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003).

[39]

*Press v. Primavera*, 685 F. Supp. 3d 216, 225 (S.D.N.Y. 2023) (cleaned up) (citations omitted).

[40]

*Id.* at 226.

[41]

Dkt 31 at 4.

[42]

Dkt 32 at 3–4.

New York law "provides for absolute protection of opinions,"[43] while Maryland law provides only a conditional privilege for statements of opinion.[44]  The Court therefore conducts a choice of law analysis under New York's choice of law rules to determine which state's law should govern.

As set forth in *Press v. Primavera*:[45]

"In tort cases, New York applies the law of the state with the most significant interest in the litigation, considering whether a rule is conduct-regulating or loss-allocating. Because discouraging defamation is a conduct regulating rule, the law of the situs of the tort usually applies.  This presumption exists because New York choice of law principles for conduct-regulating rules look to the jurisdiction that has the greatest interest in regulating behavior within its borders — which is usually the state where the tort occurred.  In defamation cases, the tort generally occurs where the harm occurs: in the state where the plaintiff is domiciled.

"However, if an allegedly defamatory statement is published nationally, the presumptive rule that the law of the plaintiff's domicile applies will not apply if with respect to the particular issue, some other state has a more significant relationship to the issue or the parties . . . ."[46]

Here, the Amended Complaint supports the reasonable inference that Carney is domiciled in Maryland.[47]  And although the January 29 Post arguably was published nationally via St. John's Facebook account, New York does not have a more significant relationship to the issue or the parties.  The post concerns alleged conduct by a Maryland man that took place in Maryland. And it, along with the February 19 Letter, appears intended to affect Carney's position with the

---

[43]

    *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000).

[44]

    *Piscatelli v. Van Smith*, 424 Md. 294, 314 (2012).

[45]

    685 F. Supp. 3d 216 (S.D.N.Y. 2023).

[46]

    *Id.* at 226–27.

[47]

    *See* Am. Compl. ¶ 1.

BSO, a Maryland institution.

Accordingly, Maryland law applies to plaintiff's claim to the extent that state law supplies the rule of decision.

IV.     Defamation

St. John argues that the Amended Complaint should be dismissed because (1) the Challenged Statements are not statements of fact, and (2) the Amended Complaint does not allege adequately falsity or actual malice.  The Court assesses each argument in turn.

A.     Statements of Fact

St. John argues that the Challenged Statements are nonactionable opinion statements under New York law.  As set forth above, New York law does not apply.  In the alternative, the Court assesses whether the Challenged Statements are (1) protected by the First Amendment, or (2) nonactionable under Maryland law.

1.     First Amendment Protection

In *Milkovich v. Lorain Journal Co.*,[48] the Supreme Court held that "a statement on matters of public concern must be provable as false before there can be liability under state defamation law . . . ."[49]  The First Amendment thus protects "statements that cannot 'reasonably [be]

---

[48]     497 U.S. 1 (1990).

[49]     *Id.* at 19.  Although the *Milkovich* holding applied only to "situations . . . where a media defendant is involved," *id.* at 19–20, the Second Circuit has held that this standard applies also to nonmedia defendants "in cases where the statements were directed towards a public

interpreted as stating actual facts' about an individual," including "'imaginative expression'" and "'rhetorical hyperbole.'"[50]

The First Amendment does not provide for absolute protection of opinions.[51]  As the Supreme Court explained in *Milkovich*:

> If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'"[52]

Even where a challenged statement contains an opinion, "the dispositive inquiry" is "whether the challenged statement can reasonably be construed to be stating or implying facts about the defamation plaintiff."[53]  "An assertion of fact is objective: *inter alia*, a claim of the existence or attribute of some event, person, place, or thing."[54]  As illustrative examples, "accusing someone of

---

audience with an interest in that concern."  *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 150 (2d Cir. 2000).  The Amended Complaint supports the inference that the statements at issue here involved a matter of concern and were directed toward a public audience with an interest in the subject matter.  *See* Am. Compl. ¶¶ 5, 9 (Challenged Statements posted to St. John's "Facebook page which is accessed by thousands of people in the musical community").

[50]    *Milkovich*, 497 U.S. at 20 (alteration in original) (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50–55 (1988))

[51]    *Celle*, 209 F.3d at 178.

[52]    *Milkovich*, 497 U.S. at 18–19.

[53]    *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 148 (2d Cir. 2000).

[54]    Robert D. Sack, *Protection of Opinion Under the First Amendment: Reflections on Alfred Hill, "Defamation and Privacy Under the First Amendment,"* 100 Colum. L. Rev. 294, 297 (2000) (cited by *Celle*, 209 F.3d at 178).

perjuring himself, raping someone at gunpoint, libeling someone, or personally approving prostitution on his property are sufficiently definite to be proven false.  But accusing someone of being far-right, right-wing, a conspiracy theorist, a fascist, part of the radical right, a communist, a blackmailer, a scab, a toady, a hypocrite, a racist, a fraud, or a bully is not verifiable."[55]  "The determination of whether a statement is opinion or rhetorical hyperbole as opposed to a factual presentation is a question of law for the court."[56]

Accordingly, for each of the 13 Challenged Statements set forth above, the Court assesses whether it states or implies a fact that is verifiably true or false.

i.    *Statement or Implication of Verifiably True or False Facts*

Statement 1 alleges that "a lot of women have been harassed and abused over a period of decades by this guy." An allegation that a defamation plaintiff "sexually harassed" another person "impl[ies] an assertion of an objective fact," even if it is couched as the speaker's opinion about the conduct at issue.[57]

Statement 2 alleges that Carney "broke down any sort of audition requirements so that [his now-wife] could play in the orchestra without needing to audition."[58]  Statement 2 alleges

---

[55]

*Flynn v. Cable News Network, Inc.*, No. 21-CV-2587 (AS), 2024 WL 1765566, at *5 (S.D.N.Y. Apr. 24, 2024).

[56]

*Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985).

[57]

*See van der Stelt v. Georgetown Univ.*, 774 F. Supp. 3d 90, 121 (D.D.C. 2025) (accusation that professor "sexually harassed" student had "sufficient specificity" to be actionable).

[58]

The Amended Complaint quotes the statement as referring to Carney's "girlfriend, now wife," Am. Compl. ¶ 6, while the January 29 Post itself refers to Carney's "mistress, then second wife."  Dkt 22-1 at 1.  The Amended Complaint thus does not appear to challenge

the verifiably true or false fact that Carney took steps to facilitate his second wife's position with the orchestra.

Statement 3 alleges that Carney plays violin at a "mediocre student level, at best" and "sucks at violin."  Statement 3 conveys St. John's opinion about the quality of Carney's violin ability.  It does not allege facts capable of verification.

Statement 4 alleges that Carney has a "longstanding reputation as a sexual predator who is known for actively fostering a toxic working environment."[59]  It implies the verifiably true or false fact that Carney engaged in sexually predatory and inappropriate workplace conduct.[60]  Although the use of "toxic" may convey St. John's opinion, the statement nevertheless implies the existence of facts substantiating that opinion.  And just as the statement "'[i]n my opinion John Jones is a liar' . . . implies a knowledge of facts which lead to the conclusion that Jones told an untruth,"[61] so too does the reference to Carney's "longstanding reputation" imply a knowledge of facts underlying that alleged reputation.

Statement 5 alleges that "[i]t has been reported both publicly and privately, including by musicians known to me personally, that Mr. Carney has solicited numerous women in the orchestra for sex."  Whether Carney did or did not ask women in the orchestra for sex is a verifiably

---

or allege the falsity of the allegation that Carney had a mistress.

[59]    Am. Compl. ¶ 10; Dkt 22-1 at 2.

[60]    So much of the statement as attributes to Carney the alleged reputation, as distinct from the implied facts underlying the alleged reputation, may present a difficult question as to whether that portion of the statement alone is protected.  In view of the disposition of the motion, the Court need not now decide whether Statement 4 is protected in that respect.

[61]    *Milkovich*, 497 U.S. at 18.

true or false fact.[62]

        The introduction to the allegation — "It has been reported both publicly and privately . . ." — does not afford any protection to the statement.  The First Amendment does not protect the unprivileged republication of defamatory statements.[63]  Here, the fair report privilege does not apply because it is not "apparent either from specific attribution or from the overall context that the article is quoting, paraphrasing, or otherwise drawing upon official documents or proceedings."[64]  And the neutral reportage privilege does not apply because, among other reasons, Statement 5 "concurs in the charges made by others."[65]

        Statement 6 alleges that "[i]t is well known that oboist Katherine Needleman rejected his advances 20 years and that he has made he working life unnecessarily difficult since that time." The allegation that Carney made Needleman's "working life unnecessarily difficult" after she rejected a sexual advance implies alleges a verifiably true or false fact — that Carney took retaliatory action against her — even if it conveys also St. John's opinion about the effect that Carney's conduct had on Needleman's life.  The introductory phrase "it is well known that . . ." does not protect the statement for the same reason the introduction to Statement 5 did not protect that

---

[62]

    As with Statement 4, so much of the statement as alleges that there are reports about Carney's conduct — as distinct from the facts implied by the statement — may present a difficult question as to whether that portion of the statement alone is protected.  In view of the disposition of the motion, the Court need not now decide whether Statement 5 is protected in that respect.

[63]

    *Adelson v. Harris*, 774 F.3d 803, 807 (2d Cir. 2014).

[64]

    *Dameron v. Washington Mag., Inc.*, 779 F.2d 736, 739 (D.C. Cir. 1985) (cited with approval by *Adelson*, 774 F.3d at 808).

[65]

    *Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 120 (2d Cir. 1977).

statement — the First Amendment does not protect the unprivileged republication of defamatory statements.

Statement 7 alleges that "[w]hen the matter [involving Needleman] was investigated in 2025, Mr. Carney initially lied about his actions to investigators, ultimately admitting to propositioning Needleman only after he was divorced from his wife years later." Statement 7 alleges the verifiably true or false fact that Carney lied to investigators.

Statement 8 alleges that "[m]ultiple sources have indicated that several string sub positions were reserved for women who would sleep with him." Whether positions with BSO were in fact reserved for musicians who would sleep with Carney is a verifiably true or also fact. The use of "multiple sources have indicated" at the beginning of the sentence does not protect the statement for the same reason the introductions to Statements 5 and 7 did not protect those statements.

Statement 9 alleges that "[o]ne musician expressed shock at the lewd comments he made about her breasts when she was a student." This statement alleges a verfiably true fact — that Carney commented on a woman's breasts when she was a student — even if it also conveys an opinion that the comment was "lewd."

Statement 10 alleges that "[a]nother [musician] obtained a restraining order against him." Whether another musician in fact did get a restraining order against Carney is a verifiably true or false fact.

Statement 11 alleges that Carney "reportedly took steps to ensure that his girlfriend, who later became his wife, could perform in the orchestra without submitting the usual audition process." This statement alleges the same verifiably true facts as Statement 2. The caveat that Carney "reportedly took steps" offers no additional protection for the same reason the introductions to Statements 5, 7, and 8 did not protect those statements.

Statement 12 alleges that Carney "has an established record as an untruthful sexual predator and workplace tyrant." Statement 12 characterizes Carney as (1) untruthful, (2) a sexual predator, and (3) a workplace tyrant. The "untruthful" characterization alleges a verifiable fact to the same extent as the " John Jones is a liar" example in *Milkovich*. And like Statement 4, the "sexual predator" and "workplace tyrant" characterizations imply the verifiably true or false fact that Carney engaged in sexually predatory and inappropriate workplace conduct.[66] For the same reason, Statement 13 — Carney "was a predator for decades" — implies a verifiably true or false fact.

### 2.    *Full Statement of Bases for Implied Facts*

An opinion statement that implies verifiably true or false facts nevertheless may be protected by the First Amendment. "[T]hough neither the Second Circuit nor the Supreme Court has explicitly held the same under the First Amendment, every circuit to consider the question" has held that an opinion is constitutionally protected when the bases for it are fully disclosed.[67] This protection does not apply where the statement "is coupled with a clear but false implication that the author is privy to facts about the person that are unknown to the general reader," including where "an author represents that he has private, first-hand knowledge which substantiates the opinions he

---

[66]    As with Statements 4 and 5, so much of the statement as attributes to Carney an "established record," as distinct from the implied facts underlying that alleged record, may present a difficult question as to whether that portion of the statement alone is protected. In view of the disposition of the motion, the Court need not now decide whether Statement 12 is protected in that respect.

[67]    *Flynn*, 2024 WL 1765566, at *10 (citing cases); *see also id.* at *13 ("By disclosing the facts on which the opinion is based, the cases make clear that the author forecloses the possibility (at least to the reasonable reader) that she has some further, unstated facts justifying the opinion.").

expresses."[68]

Statements 2, 5, 6, 7, 8, 9, 10, and 11 allege verifiably true or false facts directly rather than by implication.  The protection therefore cannot apply to these statements because they are not based on additional facts, whether disclosed or undisclosed.

The protection likewise does not apply to the remaining Challenged Statements (1, 4, 12, and 13) because the bases for them are not fully disclosed.  Those statements refer to "a lot of women . . . over a period of decades" (Statement 1), Carney's alleged "longstanding reputation" (Statement 4) and "established record" (Statement 12), and that he allegedly was a predator "for decades" (Statement 13).  Although Statements 2, 5, 6, 7, 8, 9, 10, and 11 include a few examples that allegedly support Statements 1, 4, 12, and 13, the expansive language used in the latter set indicates that there are undisclosed facts that substantiate St. John's characterization.  The specific examples given — retaliation against the oboist, a lewd comment about a musician's breasts, a musician obtaining a restraining order against him — do not amount to "a lot of women [who] have been harassed and abused over a period of decades."  Statements 1, 4, 12, and 13 thus carry the clear implication that the author is privy to facts beyond those set forth in Statements 2, 5, 6, 7, 8, 9, 10, and 11.  Furthermore, Statement 5 — "It has been reported both publicly and privately, including by musicians known to me personally, that Carney solicited numerous women in the orchestra for sex" — indicates that the bases for the statements are not fully disclosed because it suggests that St. John is aware of private reports and disclosures from musicians she knows about Carney's behavior.

\* \* \*

---

[68]    *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977).

For the foregoing reasons, at this point in the litigation, it can be said only that Statement 3 is protected by the First Amendment.

### 2.    *Actionable Statements Under Maryland Law*

#### i.    *Fair Comment Privilege*

Under Maryland law, the "fair comment privilege" applies to individuals who "'honestly express a fair and reasonable opinion or comment on matters of legitimate public interest.'"[69] However, "[i]n a claim for defamation, a motion to dismiss on grounds that the alleged defamatory statement is privileged should only be granted if the privilege is an absolute one and should not be granted when a conditional privilege is asserted."[70] Accordingly, dismissal based on the fair comment privilege would be inappropriate at this stage.[71]

#### ii.    *Attribution to Others*

St. John argues that some, but not all, of the Challenge Statements are not actionable because they refer to reports made by others. As set forth above, the First Amendment does not protect statements merely because they are attributed to others. Similarly, under Maryland law, an

---

[69]    *Piscatelli*, 424 Md. at 314 (quoting *A.S. Abell Co. v. Kirby*, 227 Md. 267, 272 (1961)).

[70]    *Woodruff v. Trepel*, 125 Md. App. 381, 390 (Ct. Spec. App. Md. 1999).

[71]    St. John argues that, under New York's anti-SLAPP statute, plaintiff must show, before discovery, a probability of success on the merits to prevent dismissal of his claim. First, as set forth above, Maryland law applies here, and plaintiff has not argued that Maryland's anti-SLAPP statute requires a similar heightened standard. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-807(b). Second, the heightened pleading standard conflicts with Federal Rules of Civil Procedure 12 and 56 and thus cannot be applied here. *See Carroll v. Trump*, 590 F.Supp.3d 575, 582–85 (S.D.N.Y. 2022).

20

individual "may be liable for defamation for republication of [a statement] even though she 'repeated' the words of [another] and ascribed the statements to the original speaker."[72]

Accordingly, the attribution of some of the Challenged Statements' allegations to unnamed other sources does not diminish St. John's liability, if any, for the publication of those allegations.

### B.    *Falsity*

St. John argues that the Amended Complaint fails to allege adequately the falsity of the Challenged Statements.  But the Amended Complaint identifies the Challenged Statements and alleges that each of them "is false."[73]  Plaintiff therefore has alleged adequately the falsity of the Challenged Statements.

### C.    *Actual Malice*

Under the First Amendment, "actual malice is a required element of a defamation claim when the plaintiff is a public figure."[74]  A plaintiff may be designated a public figure for all purposes or for a limited purpose.  The Court assesses whether Carney fits into either category such that actual malice is a required element of his defamation claim.

---

[72]

*Woodruff*, 125 Md. App. at 395 (citing *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1298 (D.C. Cir. 1988) (holding that "one who republishes a defamatory statement 'adopts' it as his own, and is liable in equal measure to the original defamer."))

[73]

Am. Compl. ¶ 12.

[74]

*Palin v. New York Times Co.*, 113 F.4th 245, 258 (2d Cir. 2024).

### 1.    General Purpose Public Figure

"Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life."[75]  "To classify [a plaintiff] as a general purpose public figure, . . . his celebrity must be greater than that of a successful musician 'well known in some circles.'"[76]  Here, the Amended Complaint alleges that Carney is "a well known musician who has been Concertmaster of the [BSO] for more than 24 years" and that he has "an international reputation as a concert violinist and concertmaster."[77]  But even "notable success and recognition" within a musical subgenre does not qualify a performer as a general purpose public figure.[78]  The Amended Complaint does not allege that Carney's notoriety eclipses that level.  Accordingly, the Court cannot conclude at this stage that Carney is a general purpose public figure.

### 2.    Limited Purpose Public Figure

"A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention."[79]  Rather, a plaintiff becomes a "limited purpose public figure" where he has "(1) successfully invited public attention

---

[75]    *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974).

[76]    *Coleman v. Grand*, 523 F. Supp. 3d 244, 256 (E.D.N.Y. 2021) (quoting *Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 22 F. Supp. 3d 240, 249 (S.D.N.Y. 2014)).

[77]    Am. Compl. at 1.

[78]    *See Coleman*, 523 F. Supp. 3d at 256.

[79]    *Wolston v. Reader's Dig. Ass'n, Inc.*, 443 U.S. 157, 167 (1979).

22

to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media."[80]

Drawing all reasonable inferences in Carney's favor, as the Court must at this juncture, it is not evident that Carney invited public attention to his views regarding his alleged misconduct, voluntarily injected himself into any public controversy on that subject, or maintained regular and continuing access to the media.   Accordingly, the Court cannot conclude at this stage that Carney is a limited purpose public figure, and therefore the Amended Complaint need not allege actual malice to survive the motion to dismiss.

IV.    *Legal Fees*

St. John argues that she is entitled to legal fees.  As set forth above, this request is denied in light of the disposition of this motion.

---

[80]    *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136–37 (2d Cir. 1984).

23

### *Conclusion*

For the foregoing reasons, defendant's motion to dismiss (Dkt 26) is denied. The Court will conduct a pretrial conference on November 13, 2025, at 10 a.m. in Courtroom 21B.


SO ORDERED.

Dated:       October 20, 2025

_____

Lewis A. Kaplan
United States District Judge